UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELALEUCA, INC.,<br><br>           Plaintiff,<br><br>     v.<br><br>DARYL HANSEN,<br><br>           Defendant. | Case No. CV 10-553-S-EJL<br><br>**MEMORANDUM ORDER** |

## INTRODUCTION

Pending before the Court is Defendant's Motion to Dismiss (Dkt. No. 9.) The Complaint in this action was filed on November 10, 2010 and the pending Motion was filed on February 7, 2011. (Dkt. Nos. 1, 9.) The Plaintiff filed an opposition and Defendant filed an objection to the opposition. (Dkt. Nos. 10, 11.) Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

MEMORANDUM ORDER - 1

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant Daryl Hansen resides in California and at the time of these alleged events, worked as an independent marketing executive for a multi-level marketing company called ITV. In connection with the work he performed for ITV, Mr. Hansen would attempt to get ITV customers to join ITV, performing the same type of work. Plaintiff, Melaleuca, Inc., an Idaho corporation, is engaged in a similar type of business model. Melaleuca encourages its customers to become marketing executives by referring family and friends to Melaleuca to purchase its products and allowing them to earn commission on any orders made by the referred individuals.

Additionally, Melaleuca is the owner of the domain name iglide.net. Through iglide.net, Melaleuca gives their marketing executives the option of purchasing Internet services, including e-mail. Internet access, however, is provided by Melaleuca through a third-party Internet Service Provider ("ISP"), IP Applications, Inc., who has been identified in the introductory paragraphs of the Complaint as a "non-party." (Dkt. No. 1, ¶ 4.)[2] IP Applications owns certain servers and other equipment and has, the Complaint alleges, assigned all of its rights, title, and interest in any claims, demands, and causes of

---

[1] Certain portions of the factual background in this Order were obtained from the previously filed case, Case Number CV07-212-E-EJL.

[2] The "Introductory Paragraphs" of the Complaint are somewhat confusing in the parties listed. (Dkt. No. 1, ¶¶ 3-4.) Paragraph three lists Hansen and Belova as "Defendants" who are married and were both named in *Melaleuca I*. Belova, however, is not included in the caption and the Complaint refers to Defendant in the singular.

MEMORANDUM ORDER - 2

action of any kind whatsoever that relate to the Defendant's actions in the sending of unsolicited commercial email to email accounts sold by Melaleuca to the general public for which IP Applications provides services and equipment. (Dkt. No. 1, ¶ 4.)

After Mr. Hansen began working at ITV, he contacted individuals via e-mail, some of whom worked at Melaleuca, and inquired whether they would be interested in hearing about a new business opportunity. The e-mails gave a brief description of how ITV works, exulted the benefits of working for ITV, and asked the individuals to call him. Mr. Hansen may have been aware that several of these individuals worked at Melaleuca. Some of the Melaleuca marketing executives he contacted were users of the iglide.net e-mail service.

On May 8, 2007, Melaleuca filed a Complaint in Case No. CV07-212-E-EJL, ("*Melaleuca I*")[3] alleging claims against Mr. Hansen, including violation of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM" Act), 15 U.S.C. § 7701, *et seq.*, violation of the Idaho Consumer Protection Act ("ICPA"), Idaho Code § 48-603E(2), misappropriation of trade secrets in violation of the Idaho Trade Secrets Act ("ITSA"), Idaho Code § 48-801 et seq., and tortious interference with contract. (*Melaleuca I*, Dkt. No. 1.)[4] The Defendants filed a Motion to Dismiss

---

[3] In this Order, when citing to the docket in *Melaleuca I* the Court will cite to (*Melaleuca I*, Dkt. No. ). When citing to the docket in the instant case the Court will simply use (Dkt. No. ).

[4] An Amended Complaint was filed later raising the same claims against both Daryl Hansen and his wife Svetlana Belova. (*Melaleuca I*, Dkt. No. 6.) The Defendants' filed a Motion to Dismiss for lack of personal jurisdiction which the Court granted in part dismissing Defendant

"Spam Issues" asking that the claims for violations of federal and state anti-span statutes be dismissed on the grounds that Melaleuca did not have standing to raise such claims. (*Melaleuca I*, Dkt. No. 38.) Magistrate Judge Mikel H. Williams held a hearing on the Motion and entered a Report and Recommendation ("Report") recommending that the Motion to Dismiss be granted; concluding Melaleuca lacked standing to bring a claim under the CAN-SPAM Act and that the Court should not exercise jurisdiction over the remaining state law claims. (*Melaleuca I*, Dkt. No. 69.) This Court considered the Report as well as Melaleuca's objections and the Defendants' response thereto and concluded that the Report had correctly decided the Motion and adopted the same. (*Melaleuca I*, Dkt. No. 72.) As such, the case was dismissed without prejudice. (*Melaleuca I*, Dkt. No. 73.) On October 29, 2010, Melaleuca filed an appeal which has since been voluntarily dismissed. (*Melaleuca I*, Dkt. Nos. 74, 81.) On November 17, 2010, Mr. Hansen filed a cross-appeal, which remains pending, asking whether or not the Court erred in not dismissing Melaleuca's claims with prejudice. (*Melaleuca I*, Dkt. No. 77.)

On November 10, 2010, Melaleuca initiated this new action by filing the Complaint raising the same four causes of action against Mr. Hansen. (Dkt. No. 1.) In response, Mr. Hansen filed his *pro se* Motion to Dismiss which the Court now takes up. (Dkt. No. 9.)

---

Belova from the action. (*Melaleuca I*, Dkt. Nos. 27, 31.) Paragraph 3 of the Complaint in this action lists Belova as a one of the Defendants. (Dkt. No. 1.) Though not raised in the instant Motion, it seems the Court's ruling in *Melaleuca I* on the Motion to Dismiss for Personal Jurisdiction would preclude Belova's inclusion as a party in this action.

MEMORANDUM ORDER - 4

## DISCUSSION

### 1.    Standard of Review

A motion to dismiss under Rule 12(b)(6) will be granted when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Branch v. Tunnel*, 14 F.3d 449, 453 (9th Cir. 1993). Furthermore, if a Rule 12(b)(6) motion raises "matters outside the pleading" and these matters are "presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Id.* at 453. When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See Id*.

### 2.    Defendant's Motion to Dismiss

Mr. Hansen's Motion seeks dismissal of Melaleuca's claims against him primarily based on issue preclusion/collateral estoppel as well as violations of Federal Rule of Civil

MEMORANDUM ORDER - 5

Procedure 26(d). (Dkt. No. 9.) Mr. Hansen argues the dismissal in *Melaleuca I* precludes

the claims raised here. Melaleuca opposes the Motion arguing the prior case was dismissed

without prejudice and, therefore, is not preclusive of the claims brought in this action.

(Dkt. No. 10.) Mr. Hansen replies arguing Melaleuca addresses only *res judicata*/claim

preclusion but does not dispute the application of issue preclusion/collateral estoppel.

(Dkt. No. 11, p. 2.)

### A.    Principles of Preclusion

"Although the literal definition of the term *res judicata* is expansive enough to

cover both preclusion of relitigation of the same cause of action and relitigation of the

same issue, the modern tendency is to refer to the aspect of the doctrine that precludes

relitigation of the same issue in a separate cause of action as collateral estoppel, and to

refer to that aspect preventing relitigation of the same cause of action as *res judicata*. *Res

Judicata* thus applies to protect litigants from the burden of litigating the same cause of

action with the same party or its privity" *Coeur d'Alene Tribe v. Asarco Inc.*, 280

F.Supp.2d 1094, 1117-19 (D. Idaho 2003) (quotations and citations omitted).[5] "[I]n order

---

[5] Similarly, the Idaho Supreme Court has stated "*[r]es judicata* is comprised of claim
preclusion (true res judicata ) and issue preclusion (collateral estoppel)." *Oregon Mut. Ins. Co. v.
Farm Bureau Mut. Ins. Co. of Idaho*, 218 P.3d 391, 394-94 (Idaho 2009) (citations omitted).
"*Res judicata* is an affirmative defense and the party asserting it must prove all of the essential
elements by a preponderance of the evidence." *Id*. (citation omitted). *Res judicata* "bars not only
subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any
claims relating to the same cause of action which were actually made or which might have been
made." *Lohman v. Flynn*, 78 P.3d 379, 386 (Idaho 2003) (citing *Hindmarsh v. Mock*, 57 P.3d
803, 805 (Idaho 2002) (citations omitted)).

MEMORANDUM ORDER - 6

for *res judicata* to bar litigation, the following requirements must be met: (1) the same claim or cause of action arising out of the same facts must be involved in both suits; (2) there must be a final judgment on the merits in the prior action; and (3) the parties in the instant action must be the same as or in privity with the parties in the prior action in question." *Id.* (citations omitted). "The purposes of these judicially created rules are to conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations." *Id.*[6]

On the other hand, "[c]ollateral estoppel bars 'the re-litigation of an issue that has been actually litigated and necessarily decided.'" *Schoenleber v. Harrah's Laughlin, Inc.*, 423 F.Supp.2d 1109, 1112 (D. Nev. 2006) (quoting *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 330 (9th Cir. 1995). "Collateral estoppel, or issue preclusion, bars the relitigation of both issues of law and issues of fact actually adjudicated in previous litigation between the same parties. Collateral estoppel applies not only against actual parties to prior litigation, but also against a party that is in privity to a party in

---

[6] The Idaho Supreme Court has also recognized that the three fundamental purposes served by *res judicata* are:

> First, it "[preserves] the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results." Second, it serves the public interest in protecting the courts against the burdens of repetitious litigation; and third, it advances the private interest in repose from the harassment of repetitive claims. The doctrine of claim preclusion bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made.

*Lohman*, 78 P.3d at 386.

MEMORANDUM ORDER - 7

previous litigation." *Washington Mut. Inc. v. United States*, ___ F.3d ___, No. 09-36109, 2011 WL 723101, *9 (9th Cir. March 3, 2011) (citation omitted).[7]

Federal law controls the collateral estoppel analysis where, as here, a federal court has decided the earlier case. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). *Melaleuca I* invoked the Court's original jurisdiction by virtue of the federal law claim made under the CAN-SPAM Act. (*Melaleuca I*, Dkt. No. 1.) The state claims in *Melaleuca I* were based on supplemental jurisdiction. (*Melaleuca I*, Dkt. No. 1.)[8] Because

---

[7] The Idaho Supreme Court has also stated "[u]nder principles of claim preclusion, a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." *Lohman*, 78 P.3d at 386 (citations omitted). In Idaho, "[i]ssue preclusion protects a party from litigating an identical issue with the same party or his privy. Five factors are required in order for an action to be barred on the basis of issue preclusion: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation." *Bach v. Bagley*, 229 P.3d 1146, 1157 (Idaho 2010) (citation omitted); *see also Oregon Mut. Ins.*, 218 P.3d at 395 (citations omitted); *Lohman*, 78 P.3d at 386 (citation omitted).

[8] Unlike *Melaleuca I*, however, in this case Melaleuca has also alleged diversity jurisdiction exists here over all claims. (Dkt. No. 1.) "[A] federal court sitting in diversity must apply the res judicata law of the state in which it sits." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982); *see also Murray v. Sears, Roebuck and Co.*, No. 09-05744 CW, 2010 WL 3490214, *2 (N.D. Cal. Sept. 3, 2010) (citing *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) ("Since state, rather than federal, substantive law is at issue there is no need for a uniform federal rule.... This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits."); *see also Priest v. Am. Smelting & Ref. Co.*, 409 F.2d 1229, 1231 (9th Cir. 1969) (Where federal jurisdiction "is based upon diversity of citizenship, the district court...must apply the substantive law of the forum state...."). Here however, because the dismissal in *Melaleuca I* was a federal judgment made based on this Court's original federal jurisdiction, not diversity jurisdiction, the federal law regarding collateral estoppel applies. *See*

MEMORANDUM ORDER - 8

"[f]ederal law governs the collateral estoppel effect of a case decided by a federal court,"

the Court will apply the federal law elements for collateral estoppel. *See Trevino v. Gates*,

99 F.3d 911, 923 (9th Cir.1996) (*Trevino* involved a federal law claim brought under

§ 1983 which invoked the court's original jurisdiction.) (citation omitted). Under federal

law, a prior court decision has preclusive effect under the doctrine of collateral estoppel

only where it is established that:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (quoting *Hydranautics v.*

*FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)). The party asserting preclusion based

on collateral estoppel "bears the burden of showing with clarity and certainty what was

determined by the prior judgment." *Id*. (citation omitted).

## B.    Analysis

Mr. Hansen maintains this action is bared by collateral estoppel because the issues

are identical to the first case, were actually litigated, and the determinations were a

necessary part of the judgment. (Dkt. No. 11, p. 2.) Melaleuca counters that the dismissal

of the prior case for lack of standing was without prejudice and, therefore, not a final

---

*Bui v. IBP, Inc.*, 205 F.Supp.2d 1181, 1185 (D.Ka 2002) (federal law for collateral estoppel applies even when jurisdiction is based on diversity).

adjudication on the merits as to the CAN-SPAM Act claim. (Dkt. No. 10, p. 7.)

(1)     **First and Third Elements of Collateral Estoppel.**

The parties here do not seem to dispute that this cases raises the same claims, against the same parties, upon the same factual basis as was asserted in the prior action. (Dkt. No. 10, p. 6.), (Dkt. No. 11, p. 1-2.) The Complaints in both actions name the identical parties and raise the same claims. *See* (*Melaleuca I*, Dkt. No. 1), (Dkt. No. 1.) Likewise, the cases present identical issues, namely whether: 1) Melaleuca has standing under the CAN-SPAM Act and 2) the amount in controversy exceeds $75,000.

In *Melaleuca I* the Court granted Mr. Hansen's Motion to Dismiss made pursuant to Rule 12(b)(6) on the ground that Melaleuca did not have standing to raise its CAN-SPAM Act claim. (*Melaleuca I*, Dkt. Nos. 69, 72.)[9] There are two elements for standing under the CAN-SPAM Act: (1) Plaintiff must be a provider of "Internet access service" ("IAS provider" and (2) Plaintiff must be "adversely affected" by a violation of the Act. 15 U.S.C. § 7706(g)(1). *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048-49 (9th Cir. 2009) (citation omitted). There the Court concluded that Melaleuca failed on both elements. (*Melaleuca I*, Dkt. No. 72.) As to the first element, the Court agreed with the Report's conclusion that Melaleuca was not a *bona fide* IAS provider because the access and control over the hardware that enables internet access to iglide.net customers and

---

[9] Because matters outside of the complaint were considered, the Court analyzed the Motion as a motion for summary judgment. (*Melaleuca I*, Dkt. No. 72, p. 4.)

spam filters are all held by IP Applications. (*Melaleuca I*, Dkt. Nos. 69, 71.) In doing so, the Court also rejected Melaleuca's "attempt to establish standing after filing its complaint...by having IP Applications assign its CAN-SPAM claims" to it. (*Melaleuca I*, Dkt. No. 72, p. 6.) As to the second element, the Court concluded that Melaleuca had not shown it was adversely affected. (*Melaleuca I*, Dkt. Nos. 69, 72.)

In addition, the Court found that the claim for violation of the Idaho Consumer Protection Act was preempted by federal law and Melaleuca had not satisfied the statutory amount in controversy requirement for diversity jurisdiction; noting without the CAN-SPAM Act claim it is "difficult to imagine how Plaintiff could establish damages of at least $75,000 that were not purely speculative based on the alleged emails sent to its customers." (*Melaleuca I*, Dkt. No. 72, p. 8.) The Court then stated that because "a dismissal based on a lack of standing is not an adjudication on the merits," the case was dismissed without prejudice. (*Melaleuca I*, Dkt. No. 72, p. 8.) Based on the foregoing, the Court finds the first and third elements of collateral estoppel are met.

### (2)   Second Element of Collateral Estoppel.

The real debate between the parties lies around the second element of collateral estoppel; whether or not the first proceeding ended with a final judgment on the merits. Mr. Hansen cites case law defining the second element as asking whether the issue was "actually litigated" such that Melaleuca had a "full and fair opportunity to litigate the issues. (Dkt. No. 11, p. 2.) Melaleuca, on the other had, argues the second element requires

the prior case be a "final adjudication of the merits." (Dkt. No. 10.)

Mr. Hansen maintains issue preclusion/collateral estoppel applies to bar relitigation of an issue even where there is no final judgment on the merits. (Dkt. No. 11, p. 2.) In support of his argument, Mr. Hansen cites to *Trevino v. Gates*, where the Ninth Circuit held the plaintiff was collaterally estopped from relitigating the punitive damages issue. 99 F.3d 911, 923 (9th Cir. 1996). There, the Ninth Circuit defined the second element as requiring "the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation...." *Trevino*, 99 F.3d at 923 (quoting *Town of North Bonneville v. Callaway*, 10 F.3d 1505, 1508) (9th Cir. 1993) (citations omitted).[10] Melaleuca cites to cases discussing *res judicata*, or claim preclusion, which are inapplicable here as that is a distinct analysis to the collateral estoppel/issue preclusion argument raised in Mr. Hansen's Motion. (Dkt. No. 10) (citing *Mpoyo v. Litton Electro-Optical Syst.*, 430 F.3d 985 (9th Cir. 2005); *Oscar v. Alaska Dept. of Educ. and Early Development*, 541 F.3d 978 (9th Cir. 2008); *Saint Alphonsus Reg'l Med. Ctr. v. Bannon*, 910 P.2d 155 (Idaho 1995).)

---

[10]  There the Ninth Circuit identified the elements of collateral estoppel as:
[t]o foreclose relitigation of an issue under federal law: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Trevino*, 99 F.3d at 923 (quoting *Town of North Bonneville v. Callaway*, 10 F.3d 1505 1508 (9th Cir. 1993).

MEMORANDUM ORDER - 12

The more recent case law discussing the second element of the collateral estoppel doctrine, however, requires that "the first proceeding ended with a final judgment on the merits." *Edwards*, 595 F.3d at 1012 (quoting *Hydranautics*, 204 F.3d at 885); *see also Reyn's Pasta*, 442 F.3d at 746. Thus, under federal law, "[c]ollateral estoppel, or issue preclusion, bars re-litigation of issues when:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Murray v. Sears, Roebuck and Co.*, No. 09-05744 CW, 2010 WL 28998291, at *2-3 (N.D. Cal. July 21, 2010) (quoting *Reyn's Pasta*, 442 F.3d at 746). It is "inappropriate," however, "to apply collateral estoppel when its effect would be unfair." *Id.* (quoting *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 234 (9th Cir.1989)). The Court will apply the more recent Ninth Circuit language requiring a "final judgment on the merits" to these cases.

"To be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291." *Murray*, 2010 WL 2898291, at *4.[11] "A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive

---

[11] 28 U.S.C. § 1291 provides for the jurisdiction of the courts of appeal over "all final decisions of the district courts of the United States."

effect." *Pruitt v. County of Sacramento*, No. CIV. 2:10-416 WBS KJN, 2011 WL 219551,

*3 (E.D. Cal. Jan. 20, 2011) (quoting *Luben Indus., Inc. v. United States*, 707 F.2d 1037,

1040 (9th Cir.1983); *see also Murray*, 2010 WL 2898291, at *4-5.[12] "Several factors are

relevant to the determination of 'firmness'":

> [P]reclusion should be refused if the decision was avowedly tentative. On
> the other hand, that the parties were fully heard, that the court supported its
> decision with a reasoned opinion, that the decision was subject to appeal or
> was in fact reviewed on appeal, are factors supporting the conclusion that the
> decision is final for purpose of preclusion.

*Id.* (quoting Restatement (Second) of Judgments § 13 cmt. g (1982)).

In *Luben*, the often cited case in this circuit, the Ninth Circuit stated that preclusion

should be refused if the prior decision was "avowedly tentative," but preclusion is

supported if the parties were fully heard, the Court supported its decision with a reasoned

opinion, and the decision was subject to appeal. *Luben*, 707 F.2d at 1040 (quoting

Restatement (Second) of Judgments § 13 (1982)). There, the Ninth Circuit determined that

an interlocutory order did not have preclusive affect because an unappealable decision is

"not sufficiently firm to give it collateral estoppel effect." *Id*. at 1040. Applying the *Luben*

factors here, the Court finds the prior decision in *Melaleuca I* was sufficiently firm to have

---

[12] *But see Householder Group, LLLP v. Van Mason*, 2010 WL 5093117 (Dec. 8, 2010 D.
Ariz.) (discussing the distinction between the "sufficiently firm" standards in *Luben* and *St. Paul
Fire & Marine Ins. v. F.H.*, 55 F.3d 1420 (9th Cir. 1995)). The Court finds the *Luben* factors to
be applicable here as the prior rulings in *Melaleuca I* in question here resulted in a final judgment
unlike the circumstances presented in *St. Paul Fire*.

MEMORANDUM ORDER - 14

preclusive effect.

As to the first factor, the parties were fully heard on the issues in the prior proceeding. The Motion to Dismiss raised the CAN-SPAM Act standing issue and was fully briefed by both sides. (*Melaleuca I*, Dkt. Nos. 38, 43, 44.) The parties both filed several exhibits and Affidavits to support their arguments on the Motion. Further, in their status conference, Melaleuca, the aggrieved party, requested that the Court decide the Motion without oral argument, further briefing, or discovery. (*Melaleuca I*, Dkt. No. 72, p. 4.) Following the issuance of the Report, Melaleuca filed fourteen pages of objections and a supporting Affidavit challenging the Report's conclusions on the CAN-SPAM Act standing issue and raising the argument that diversity jurisdiction applies to the state law claims. (*Melaleuca I*, Dkt. No. 70.) Mr. Hansen responded to the objections including opposing Melaleuca's new diversity argument. (*Melaleuca I*, Dkt. No. 71.) This Court then took up the matter and, after considering all of the materials submitted by the parties *de novo*, the Court issued its Order adopting the Report. (*Melaleuca I*, Dkt. No. 72.) In that Order, the Court demonstrated it had fully considered the issues involving CAN-SPAM Act standing as well as Melaleuca's diversity argument. It is clear from reading both of the decisions in *Melaleuca I* as well as a review of the filings by the parties that both sides were given an opportunity to be fully heard on the issues.

As to the second *Luben* factor, both the Magistrate Judge and this Court supported their decisions in *Melaleuca I* with well-reasoned opinions neither of which were tentative.

MEMORANDUM ORDER - 15

In the Report, the Magistrate Judge accurately relayed the facts of the case, the applicable standard of law, and thoroughly discussed and analyzed the CAN-SPAM Act standing issue. (*Melaleuca I*, Dkt. No. 69.) This Court too provided a thorough discussion and analysis of the CAN-SPAM Act standing issue as well as the amount in controversy requirement for diversity jurisdiction. (*Melaleuca I*, Dkt. No. 72.) In both opinions, the parties' briefing and arguments were addressed, fully considered, and decided unequivocally.

As to the third factor, whether the decision was subject to appeal or was in fact reviewed on appeal, in *Melaleuca I* the Court entering a final Judgment dismissing the case. (*Melaleuca I*, Dkt. No. 73.) Both parties appealed. (*Melaleuca I*, Dkt. Nos. 74, 77, 80.) Melaleuca has since voluntarily dismissed his appeal presumably in favor of filing this new action. (*Melaleuca I*, Dkt. No. 81.) Mr. Hansen's appeal remains pending. (*Melaleuca I*, Dkt. Nos. 77, 80.)

Based on the foregoing and having applied the *Luben* factors, the Court finds the decisions issued in *Melaleuca I* were final for collateral estoppel purposes as the decisions were sufficiently firm so as to be accorded conclusive effect.

### (3)     The Appeals in *Melaleuca I*.

Though not argued by the parties, the Court also finds relevant the fact of Mr. Hansen's pending appeal in *Melaleuca I* challenging whether this Court's dismissal of that case without prejudice was in error. (*Melaleuca I*, Dkt. No. 80); *but see Bui v. IBP, Inc.*,

MEMORANDUM ORDER - 16

205 F.Supp.2d 1181, 1189 (D. Ka 2002) ("The pendency of the appeal does not alter the finality of the case for purposes of res judicata or collateral estoppel.") (citations omitted). The practical implications of the Ninth Circuit's forthcoming decision of the *Melaleuca I* appeal will directly impact the very question presented on this Motion; whether or not the dismissal of *Melaleuca I* should have been with or without prejudice. Were the Ninth Circuit to find error in this Court's order in *Melaleuca I*, Mr. Hansen would possess an order dismissing with prejudice the claims against him in that case. In such event, without the application of the collateral estoppel doctrine here, Mr. Hansen would be required to once again defend himself in this case against the same claims previously dismissed in *Melaleuca I*. Such a result would be wholly unfair and could potentially result in inconsistent judgments between the two cases.

It goes without saying that such an outcome is directly contrary to the well established purposes of collateral estoppel in promoting judicial economy by preventing the relitigation of an issue previously argued and resolved in a prior proceeding. *See Hydranautics*, 204 F.3d at 885; *see also United States v. Stauffer Chem. Co*., 464 U.S. 165, 176, (1984) (White, J., concurring) ("Collateral estoppel is generally said to have three purposes: to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.") (internal quotations omitted)). Thus, the fact that appeals were filed in *Melaleuca I* weights in favor of finding the prior decisions were sufficiently firm and final. In addition,

because one appeal remains pending, policy reasons support applying collateral estoppel here to avoid inconsistent judgments, prejudice, and wasting judicial resources. The appeal in *Melaleuca I* was Melaleuca's proper vehicle for challenging the dismissal, not the filing of a new suit.

### (4)   Curable Defects

Melaleuca contends it has "cured" its deficiencies from *Melaleuca I* and, therefore, this case should be allowed to proceed. (Dkt. No. 10.) The concept of "curable defect" is an exception to the application of collateral estoppel's preclusive effect that appears in other circuits. *See Bui v. IBP, Inc.*, 205 F.Supp.2d 1181, 1187 (D.Ka. 2002). The Ninth Circuit too has discussed curable defects as being permissible in a second action where the prior case was not adjudicated on the merits. *See Wolfson v. Brammer*, 616 F.3d 1045, 1064-65 (9th Cir. 2010). The dismissal in *Melaleuca I* was primarily based on the lack of CAN-SPAM Act standing as well as lack of diversity jurisdiction. (*Melaleuca I*, Dkt. No. 72.) Because lack of standing and diversity are jurisdictional defects, they are subject to correction in a second action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[13] Thus, Melaleuca can avoid the application of collateral estoppel's preclusive rule

---

[13] "Standing" is generally understood to address the question of whether the plaintiff has suffered a redressable injury. *See generally Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Article III standing requires the plaintiff to establish: "(1) an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff

here if it has cured the defects from *Melaleuca I*. If it cannot, however, as discussed above, because the decision in *Melaleuca I* was a final adjudication of the same issues as to the same parties, application of the collateral estoppel doctrine is appropriate.

Again, the CAN-SPAM Act standing inquiry involves two general components: (1) whether the plaintiff is an "IAS provider", and (2) whether the plaintiff was "adversely affected by" statutory violations." *Gordon*, 575 F.3d at 1048-49 (citation omitted). The *Melaleuca I* decisions concluded that Melaleuca lacked both of the required elements for standing under the CAN-SPAM Act. (*Melaleuca I*, Dkt. Nos. 69, 72.) On the CAN-SPAM Act standing issue, the Court concluded Melaleuca had failed to satisfy either component. The Court determined it was not an IAS provider, rejecting Melaleuca's argument that IP Applications' assignment of claims after the filing of the Complaint conferred standing. (*Melaleuca I*, Dkt. No. 72, p. 6.) Because the IP Applications' assignment is dated prior to the Complaint filed in this action, Melaleuca argues it has cured this defect. The Court finds that Melaleuca may have corrected the temporal standing issue here with the filing of this action dated subsequent to the assignment.[14]

The *Melaleuca I* decision, however, also concluded that Melaleuca failed to

_____

seeks in bringing suit)." *Sprint Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[14] Whether or not the assignment is valid and/or actually provides CAN-SPAM Act standing is not decided here. This decision only concludes that for purposes of collateral estoppel it appears this isolated defect may be cured. The substantive questions surrounding the assignment would have to be tested in future motions.

establish the second CAN-SPAM Act standing requirement because it had not established any direct adverse affect or damages incurred as a result of Mr. Hansen's emails and that the type of harm alleged did not satisfy the legal test Congress intended for IAS providers to prove under the Act. (*Melaleuca I*, Dkt. No. 72, p. 7) (citing *see Gordon*, 575 F.3d at 1053-54.) This deficiency has not been cured.

In this case, Melaleuca alleges the same damages/types of harms as were raised in *Melaleuca I* that the Court deemed insufficient to meet the second CAN-SPAM Act standing requirement. *Compare* (*Melaleuca I*, Dkt. No. 6.) *with* (Dkt. No. 1.) Therefore, Melaleuca has not cured that deficiency from *Melaleuca I* so as to preclude the application of collateral estoppel. (Dkt. No. 1.) Thus, while it may be that Melaleuca has cured its deficiencies in terms of the first standing requirement under the CAN-SPAM Act, the fact remains that Melaleuca has not cured the defect as to the second standing requirement in this action. As such, the Court's prior ruling that Melaleuca had not shown it was adversely affected is preclusive to this action because that ruling was final and identical to the claim and parties here. Accordingly, the Court finds the doctrine of collateral estoppel applies *Melaleuca I*'s ruling on the second standing element to this case precluding Melaleuca's claims.

Likewise, the deficiencies from *Melaleuca I* as to diversity jurisdiction were not cured in this case. In *Melaleuca I*, the Court considered Melaleuca's diversity jurisdiction argument and concluded it had not shown that the amount in controversy exceeded

MEMORANDUM ORDER - 20

$75,000. (*Melaleuca I*, Dkt. Nos. 70, 71, 72.) Preclusion on this issue applies here as well as it was again raised as the same claims and same parties and fully considered by the Court. In objecting to the Report in *Melaleuca I*, Melaleuca claimed the amount in controversy exceeded $75,000 and argued it was "confident" diversity jurisdiction exists and asked for leave to amend the complaint to make such a showing. (*Melaleuca I*, Dkt. No. 70, p. 12.)  The Court's decision, however, was sufficiently final in concluding Melaleuca failed to satisfy the diversity jurisdiction requirements; in particular as to the amount in controversy.  (*Melaleuca I*, Dkt. Nos. 70, 71, 72.)

Unlike the prior case however, as Melaleuca points out, the Complaint filed in this action alleges diversity, 28 U.S.C. § 1332, as another basis for jurisdiction. (Dkt. No. 10, p. 6.) The difference between the two cases lies in Paragraphs 16, 20, 24, and 31 of the Complaint here where Melaleuca adds the phrase "damages exceed $75,000." (Dkt. No. 1.) This addition to Melaleuca's Complaint, however, does not cure the diversity jurisdictional defects of *Melaleuca I*. (Dkt. No. 1.)

Such bare conclusory statements fail to satisfy the amount in controversy showing required by § 1332. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) ("Conclusory allegations as to the amount in controversy are insufficient."). A party seeking to invoke federal subject matter jurisdiction has the burden of establishing that jurisdiction exists. *See Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977); *see also Fields v. Sedgwick Associated*

MEMORANDUM ORDER - 21

*Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986) (holding a plaintiff must make a prima facie

showing of subject matter jurisdiction in order to maintain his claims).

"When alleging the jurisdictional amount to maintain a suit in diversity, a plaintiff

must demonstrate a good faith, minimally reasonable belief that the suit might result in a

judgment in excess of that amount." *Szanto v. British Airways, et al.*, Case No. 99-CV-

1508-J, 2000 WL 34017115, *2 (S.D. Cal. Mar. 15, 2000) (quoting *St. Paul Mercury*

*Indemnity Co. v. Red Cab Co.*, 303 U S 283, 288 (1938)). "However, once a plaintiffs

jurisdictional allegations are challenged, the plaintiff bears the burden of proving his claim

meets the jurisdictional amount." *Id.* (citing *McNurt v. Genera Motors Acceptance Corp.*,

298 U.S 178, 189, (1936), *Sanchez v. Monumental Life Ins. Co.*, 102 F.2d 398, 403-04 (9th

Cir. 1996)).

Melaleuca's bare conclusory allegations in the Complaint that the amount in

controversy exceeds $75,000 do not satisfy this burden. As the Court determined in

*Melaleuca I*, there are not facts alleged in the Complaint from which it can be inferred that

the amount in controversy exceeds $75,000 beyond the conculsory statements. This is

particularly true where, as here, the CAN-SPAM Act claim is dismissed and, therefore,

those statutory damages are not available to Melaleuca. As such, Melaleuca has not cured

the deficiencies of *Melaleuca I* so as to avoid application of collateral estoppel here.

### C.    Conclusion

The parties and claims raised in this second action are identical to those brought

and dismissed in *Melaleuca I*. The issues upon which the dismissal in *Melaleuca I* was decided were fully argued by the parties and considered by the Court with finality. Two well reasoned opinions were issued in *Melaleuca I* discussing the decision to which both parties filed appeals. One of these appeals remains pending, the outcome of which will directly impact this case such that the policies behind collateral estoppel warrant its application to this case. Finally, Melaleuca has failed to cure the defects of *Melaleuca I* which resulted in the dismissal in that case. For these reasons, the Court finds the doctrine of collateral estoppel should be applied here to preclude re-litigation of identical issues and claims against identical parties. Accordingly, the Motion to Dismiss is granted.

## <u>ORDER</u>

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Dkt. No. 9) is **GRANTED**.

DATED:  **April 15, 2011**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 23